FILED

AUG 2 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

pro., se.
Carl McIntosh #22260-044
FCI-Terre Haute
P.O. Box 33
Terre Haute, IN 47808

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

Carl McIntosh,                          )

     Plaintiff,

vs.

Harley G. Lappin, Alberto R. Gonzales,

Michael Mukasey, Michael Nalley, Mark

A. Bezy, Rick V. Veach, H. Marbury,

Paula Jarneck, Brian Jett, D. Ebert,

David Young, Jeff Lamping, Randall

Johnson, Craig Coil, S. Seanez,

Thomas Webster, Julie Beighley, Debi

Lamping, Andy Rupska, Eurrea, Dennis

Gaymon, Germapo Tavares, Juan Castillo,

Wendy Roal, Don Carlson, Bruce Baumgartner,

Rachel Swalls, R. Baskerville, Robert

Erwin, Mr. Rowe, United States Dept

of Justice, Federal Bureau of Prisons,

United States of America, and any other

successor to their office. Et., Al.,

     Defendants.

Case: 1:08-cv-01506
Assigned To : Unassigned
Assign. Date : 8/28/2008
Description: Pro Se Gen. Civil

DEMAND A JURY TRIAL

RECEIVED

AUG - 1 2008

Clerk, U.S. District and
Bankruptcy Courts

CIVIL RIGHTS COMPLAINT

I.

PRELIMINARY STATEMENT

A.  NATURE OF THIS ACTION.

1.  Plaintiff, Carl McIntosh since Aug. 09, 2006, has been
incarcerated at the Federal Correctional Institution, Terre Haute,
Indiana. The records shows that the Plaintiff is held in custody
under color of authority of the Unites' States Department of Justice,
United States of America, and in the control and care of the Federal
Bureau of Prisons herein. Plaintiff is in custody under living con-
ditions that are Cruel and Inhumane.

2.  Plaintiff, brings this action, to redress for violations
of his Constitutional Rights, and injuries suffered herein. In
addition Plaintiff, bring this action upon "BIVENS".

3.  This action arises under the Constitution, particularly
under the provisions of the "First", "Fifth", and "Eighth"
Amendments, substantive claims of the "Right of Choice", "Cruel and
unusual Punishment", and "Procedural Due Process".

4.  Plaintiff, is made to suffer with different kinds of
medical problems, from building contaminates, suchas breathing filth,
asbestos and other danagerous particals cause by unfiltered uncycled
air and drinking rusted, polluted water. Also by reasons of
inadequate, improper and incompetent medicial and dental treatment-
care, and by Defendants knowingly housing Plaintiff in the facility
that was condemn and schedule to be demolished when the new USP
was built statement by Instructor Joe McCarthney. A facilty not
suitable for the Plaintiff or other inmates, that the government
had deemed should be replaced built the new USP.

2.

5.   Plaintiff, alleges further that the overcrowding and
deplorable sanitary conditions "inter alia" forced Plaintiff and
others to live in an unsanitary cons, of confinement which is
extremely unpleasant and medically danagerous because the facts
that Plaintiff as well as others risk infection of a known danagerous
viral contagiousness.

6.   Plaintiff, also alleges that the overcrowding and the
lack of medical doctors and professional staff has forced Plaintiff
to endure long periods of intense pain and discomfort, which has
caused plaintiff to substain bodily injuries, boils, unknown bumps
and sores and engrown toenail with infected fungus growth that was
schedule to be remove in Feb. 2006 and forgotten about, but the
Plaintiff still suffer from the pain, and still requesting service.

7.   Plaintiff, suffered pain needlessly and unjust when
relief was available, but because of the deliberate indifference,
of the Defendants for overcrowding the facility cause the medical-
dental overcrowding, unsanitary conditions which caused the Cruel
and Unusual Punishment, violating the Eighth Amendment.

8.   Plaintiff, asserts these conditions are exacerbated by
Defendants malfeasance has aggravated the unsanitary conditions
by habitually refusing to issue proper cleaning supplies such as
"disinfectant" and ect..

9.   Defendants, posses knowledge of the infirm conditions
and have the means to cure the deplorable conditions, but the
Defendants intentionally refusing to prevent the unsanitary
conditions has put the Plaintiff , as well as other in a dangerous
environment.

3.

10.   Plaintiff, alleges further the the FCI has serious
unsanitation deficients or otherwise degrading conditions which
includes breathing Asbestos, Filth, has Pest Infestion, Unregulated
Tempertures, Ventilation, Contaminated Water Pipes and Drinking
Water, Plumbing, Noise; Toilets, and Urines are constantly coated
with urine including the floors.

11.   Plaintiff, content that the walls, ceilings and the
floors has small cracks and holes which permits insets to infest
the walls. The inade inadequacies of the insects, vermin control,
which allows roaches to infest the cells, storerooms and hallways,
subjecting Plaintiff and others to unhealthy, unsafe living conditions,
which a health hazardous injurious in nature.

12.   Plaintiff, is forced involuntary to be exposed to living
in Filth, unclean wter, leaking and unadequate plumbing, roaches,
rodents infestation and the constant smell of human waste, which
is a serious health problems(TB infection) and a danagerous and
hazardous conditions.

13.   Plaintiff, further alleges that the "Commissary" is
unconstitutionally overcharging prisoners, by marking up items to
35% to 55%, except stamps. Prisoners are not paid a minimum wages,
that the Labor Act states.

14.   Plaintiff, has suffered by reasons of inadequate incompetent
and improper prison personnel by not supervising the units, puts
Plaintiff in dangers, in the nature of emotional pain, suffering
sinsecurity as a result of the incompetent personnel.

15.   Plaintiff, is also forced to suffer the indignities of
overcrowding, unsanitary conditions in the FCI, and is unable to
maintain the normal standard of hygiene care, for him tomeet his

4.

physical condition necessitated.

16.  Plaintiff, a federal prisoner is being detained in a federal facility which supplies bad out dated foods and house tow(2) prisoners into lodgings originally intended to house only one(1) prisoner.

17.  By comparison, other prisoners are lodged in federal prisons that are some what cleaner and consequently receive better treatment and live in conditions that are patently superior to the living conditions the Plaintiff is forced to live. The food is newer and better in other federal facilities.

18.  It is immoral and unconstitutional to keep Plaintiff incarcerated in the supposely condemned medical center at FCI Terre Haute, where he must suffer all the defects of the institution while other prisoners receive the preferential treatment of the FBOP.

19.  There can be no justification for keeping Plaintiff housed in an unsanitary conditions, when it is at the expense of the health and well-being of Plaintiff, whom proablely get stomach cancer from drinking contaminated, rust water and mesothelioma a lung cancer from the exposure to asbestos, in his elderly life.

20.  Defendants, Bezy, Veach and Marbury's over-all lacking managing and controlling their staff, is a direct contribution to the violations of Federal Law[s], and the Constitution at FCI-Terre haute, Indiana.

                              II.

B.  JURISDICTION AND VENUE.

21.  This action arises under the Constitution, particularly under the First, Fifth and Eighth Constitution Amendments and

                              5.

substantiation claims herein arises under Title 42 U.S.C. §1985(a)
(2)(3), §1986, and Title 18 U.S.C. §§241 and 242.

22. Plaintiff, institutes these proceedings and invokes
the jurisdiction of the Court under and by virtue of 28 U.S.C.
§1343(a)(2)(3)(4), to obtain the costs of this suit including
reasonable Attorney's fees, damages and in furtherance of conspiracy
and fialute to prevent the injuries.

23. The District Court shall have original jurisdiction
under Title 28 U.S.C. §1357, of any Civil Action Commenced by any
person[s] to recover for Constitutional Violation and for injuries
to his/her person/or property.

24. The Court's jurisdiction is involved pursuant to Title
28 U.S.C. §1331, upholding Plaintiff's claims under the Constitution.

25. Venue is proper in the United States District Court for
the Southern District of Indiana, since the cause of action in this
complaint occurred inthe county of Vigo, City of Terre Haute,Indiana.

26. The amount is exceeds the Fifty Thousand[50,000] Dollar,
excluding costs and interest. Plaintiff invokes his Seventh Amend-
ment Right to demand the right to a jury trial.

III.

C. PLAINTIFF.

27. Plaintiff, Carl McIntosh, pro se, at all times pertinent
hereto is a citizen of the United States, and is incarcerated at
the Federal Correctional Institution, Terre haute, Indiana.

D. DEFENDANTS.

28. Defendant, Harley G. Lappin, is at all times pertinent
hereto is the duly appointed and acting Director of the Federal

6.

Bureau of Prisons. As Director Defendant has the following duties as set out in the Federal Code of Regulations.

29. Defendants, Alberto R. Gonzales and now Michael Mukasey, at all times pertinent hereto is the duly appointed and acting Attorney General. As Attorney General Defendant is the ultimate authority responsible for making official policies, rule, regulations, procedure and to insure the prisoners have a safe environment.

30. Defendant, Michael Nalley, at all times pertinent hereto is the duly appointed and acting north central regional Director.

31. Defendants, Mark A. Benzy, Rick V. Veach and now H. Marbury, at all times pertinent hereto is the duly appointed and acting Warden of the Federal Corr ectional Complex at Terre Haute, Indiana.

32. Defendants, Paula Jarnecke and now Brian Jett, at all times pertinent hereto is the duly and acting Warden of FCI-Terre Haute, a facility of FCC-Terre Haute.

33. Defendants, D. Ebert and now David Young, at times pertinent hereto is the appointed and acting Associate Warden of Operations.

34. Defendants, Randall Johnson and now Craig Coil at all times pertinent hereto is the duly appointed and acting Food Admin.

35. Defendant, Jeff Lamping, at all times pertinent hereto is the duly appointed and acting Safety Officer.

36. Defendants, S. Seanez and now Julie Beighley, at all times pertinent hereto is the duly appointed and acting Health Service Administrator.

37. Defendant, Dr. Thomas Webster, at all times pertinent hereto is the duly appointed and acting Medical Director.

38. Defendants, Debi Lamping and now Andy Rupska & Ms. Eurrea, are the duly appointed and acting Assistant Health Administrators.

39. Defendant, Dennis Gaymon, at all times pertinent hereto is the duly appointed and acting Director of the Commissary.

40. Defendant, Germapo Tavares, at all times pertinent hereto is the duly appointed and acting Associate Warden of Industry and Education.

41. Defendants, Juan Castillo and now Wendy Roal, at all times pertinent hereto is the duly appointed and acting Associate Warden of Programs.

42. Defendants, Don Carlson and now Bruce Baumgartner, at all times pertinent hereto is the duly appointed and acting Unit Manager for the Plaintiff's dorm.

43. Defendants, Robert Erwin and now Mr. Rowe, at all times pertinent hereto is duly appointed Counselor of Plaintiff's dorm.

44. Defendants, R. Baskerville and now Rachel Swalls, at all pertinent hereto is the duly appointed and acting Case manager for the Plaintiff.

45. Defendant, United States Dept. of Justice, at all times pertinent hereto, as such has a Constitutional duty to provide a safe environment, including proper Medical/Dental and proper sanitation relevant hereto.

46. Defendant, Federal Bureau of Prisons, at all times hereto is a political subdivision of the United States of America, duly organized as a Federal Agency possessing the Corporate power to sue and to be sued. Defendant Federal Bureau of Prisons, is vested with the Government and management of FCI and USP's with the protection of all the prisoners in its custody and control, relevent.

8.

47. Defendant, United States of America, at all times pertinent hereto has a Constitutional duty to provide suitable quarters, and to provide for a safe environment, sanitation, fire safety and medical/dental, relevant.

48. Defendants, Nalley Bezy, Veach and Marbury, all are members of the Federal Bureau of prisons, an are charged with the following duties under the Federal Code of Regulations, to advise the Director Lappin of the safety, sanitation, medical/dental, as to all phases of professional standards, treatment programs, obtaining adequate staff and operation of practices to be compatible with requirement.

49. Defendants, Nalley, Bezy,Veach, Marbury, Jarnecke, Jett, Ebert, Young, Lamping, Johnson,Coil,Seanez, Webster, Beighley, Lamping, Rupska, Eurrea, Gaymon, Tavares, Castillo, Roal, Carlson, Baumgartner, Swalls, Baskerville, Erwin, Rowe are at all times pertinent hereto was/are the servants, agents, appointees and employees of Defendants Lappin, Gonzales, Mukasey, Bureau of Prisons, Dept of Justice and the United States of America, acting in the furtherance and with said scope of said relationship,of the said Director, Attorney General, Bureau of Prisons, Dept. of Justice and the United States, are accountable at law for act/actions of said Defendants under Federal Case laws and with the meaning of the spirit of the Constitution.

50. Defendants, United States of America, Dept of Justice and The Bureau of Prisons are sued in their official capacities.

51. Defendants, Lappin, Gonzales, Mukasey, Nalley, Bezy, Veach, Marbury, Jarnecke, Jett, Ebert, Young, Lamping, Johnson, Coil, Seanez, Webster, Beighley, Lamping, Rupska, Eurrea, Gaymon,

Tavares, Castillo, Roal, Carlson, Baumgartner, Swalls, Baskerville, Erwin and Rowe, are all being sued in their individual and personal capacities.

IV.

STATEMENT OF FACTS

E.  CONDITIONS OF CONFINEMENT.

52.  FCI-Terre Haute, is located in the city of Terre Haute, County of Vigo, State of Indiana, inwhich the construction dates back to the 1930's and sits on approximately 27-acres, the complex is surrounded by three(3), ten(10) foot high fences with razor on the top of the fence and a green water tank outside the fence.

53.  FCI-Terre Haute is being operated by Defendants, Lappin, Gonzales, Mukasey, Nalley, Bezy, Veach, Marbury and Jett, pursuant to Federal Laws and the Constitution. Prisoners are housed on two central strctures known as East and West wings. Prisoners are housed in double tiers, inwhich the cells were designed to hold one prisoner each, however two(2) prisoners are placed in a cell.

54.  The FCI is designed for a maximum capacity of about one-thousand-two-hundred(1200) prisoners. Said designed was planned and intended for single occupant cells.

55.  The East and West units together have eleven(11) dorms, plus the shu. In the east block there are five(5) dorms, I-J-K-L-M, with the hospital , Education the Gym and safety office, There are 268 cells that are in use with 2 inmates in each totalling 536 prisoners, and the I-unit is not in use.

56.  The West block contain units B-C-D-E-F-G, Counselors Complex, Chapel, Mental health, Library and the Commissary.  There

10.

are approximately 222 cells with about 444 prisoners, however it should be noted that G-Dorm is an open dormitory and B-unit is not in use.

57.   A typical cell in the East-wing and the West-wing measure 6 X 10 = 60 square feet, which contains toilet, sink,two lockers, one bunk bed and one shelve, and no table, but C and G- Dorms have not toilets or sink in or by their bunks. The useable floor space is approximate 10 to 13 square feet remaining for 2 prisoners to share as living space. The cells are heated by wall radiation, the heat is excessively hot both winter and summer, the air circulation system is very poor and not adequate.

58.   The present population exceeding the designed standard by approximate fifty percent (50%). The small remaining space does not even allow for a table to be placed in the cells meaning all writing must be done on the bunk beds.

59.   In 2005 this USP Terre Haute was schedule to be demolish, since the new USP was built, but this old building became FCI-Terre haute and a care level 3 Medical Treatment Center, for [C.O.P. Lung Condition], the air hear is not being filtered and is contaminated with abestos, filth, dust, lint, human feces, and urine, plus other contamination. The water is contaminated with rust and other pollutants.

F.   CONDITIONS OF THE CELL.

60.   In addition to the cramped and dingy space, the plumbing, ventilation, heating noise and no emergency alarms system to alert the Duty Officer. The nois problems make the units a difficulty place in which to live, the situation is aggravated by officers not taking control of their units, and by the continuous din,

and sanitation is a continuing problem.

61.  In addition to bing overcrowded conditions in the units are unsanitary and medically dangerous, the prison has no general cleaning plan and prisoners have sole responsibility for cleannes of each cell. However, the FCI fails to provide adequate disinfect cleaning supplies, for the prisoners to clean their cells and showers.

62.  Furthermore, some mentally ill prisoners are housed in the units and their frequently refused to clean their cells excellently  for sanitation problems. The prison does not even clean the cells when a prisoner is transferred or goes to the [SHU], and places  another inmate in that dirty cell.

63.  The dngerously high "Noise Levels' are intolerable, the volume of noise in the units is at least like a train at 100 feet away. It must be emphasized that such levels are fairly constant during the waking hours. At least between the hours of 7:00 am to 10:00 pm, which is very loud.

64.  The structure, is so largely built of steel and concrete its a natural for noise ehcoes, the yelling of prisoners whom are communicating with each other and the banging of the dominoes on the tables, clanking of the dorrs being opened and closed. Which the hardships that is imposed upon the Plaintiff's, by quiet time or the only time when a peace of mind is established, after 10:00pm the only time reading is possible, which has caused Plaintiff's and others to develope severe headaches and other emotional trauma for the noise.

65.  Plaintiff and others contend that the effect of such noise levels on the health of Plaintiff and others cannot be ignored, because the high levels are irritability and dangerous

12.

psychologically effects of the confinement, here at FCI, Plaintiff
and others have and will, in time establish a hearing loss. It is
a real danger at decibles reading on averaging 70 to 80 db's,
which should remain between 10 to 15 db's to insure safety.

66.   The cells in which Plaintiff and others are confined
provide barely one quarter [$\frac{1}{4}$] the square footage of space required
by the Modern Correctional Standards, at the FCI., policies state-
ment §1060.11, states that the cells are not to be less than 70
square feet per prisoner. The FCI has inadequate failed to meet
the health and safety needs of Plaintiff and others, because the
conditions are grossly inadequate and Constitutionally Impermissible.
G.   CELL SANITATION, VENTILATION AND PLUMBING.

67.   The inadequate of insect and vermin control, let roaches
infest the storerooms, cells and the floors have small cracks and
holes, which permit insects to infest the rooms posing a health
hazard injurious in nature at night.

68.   Plaintiff and others are being subject to unhealthy and
unsafe living conditions, in addition there are a number of problems
with the plumbing system, which is inadequate in handling the needs
of the current population at the FCI. The toilets are continually
regurgitating "Raw Sewage Material' from other parts of the units
through-out the prison, causing noxious odor in the cells and Units.

69.   In the units there are always leaks and puddles, sewer
backing up, septic water leaks within the plubing chases are never
cleaned out, making it medically dangerous, for infection of Air-
borne diseases, suchas Tuberculosis.

13.

70.    The showrs are poorly maintained and are in a constant
state of disrepair, leading to temperature intolerably 'hot',
or 'cold'. Furthermore the showers are encrusted with dirt, slime
and mold between the seams in the tiles, has accumulated in the
chonically wet areas.

71.    The mattresses in most cells are torn and neither replaced
nor, disinfected [clean] between occupants, and have been saturated
with prisoner's body fluids. The mattresses and pillows shelters
dust mites, fleas, lices, staff infection and sometimes scabies
and many other forms of bacterious diseases.

72.    Ventilations is grossly inadequate, during the summer
months, air flow is provided by opening windows and fans that
circulates the air cause dust/lint, asbestos to recirculate, and
fans are'nt clean on a regular basis, causing Plaintiff and others
to be forced into breathing dunk air.

73.    There are no systems to control the temperature or humidity
causing excessive odors, heat and humidity, the insufficient vent-
ilation system significantly increases the high risk of transmission
of airborne diseases. Furthermore, the inadequate ventilation and
air flow undermines the health of Plaintiff and others and the
Sanitation at the FCI. Plaintiff further alleges that the cells are
permeated with stale air and is saturated with the fumes of feces,
the smell of urine, as well as other stale bodily odors.

74.    The plumbing is also inadequate most of the toilets in
the bathrooms in my dorm and the cells are old and urine sediments
have accumulated in the cracks in the floors causing noxious odors,
urine is also accumulated in the rough concrete walls which are

14.

difficulty to clean.

75. The water is polluted, has rusted in it and is unfit to drink, because the water becomes dark rust colored, brown for a period of time and possess floating particles, this same water is used daily to prepare food in the kitchen, the pipes are very old and corroded with rust and lead and in the cell it sometimes come out brown in the sinks and toilets.

H.   KITCHEN FACILITIES AND FOOD SERVICES.

76. The kitchen is located between the East and West units in the center of the building, it includes, bakery, dishwashing area, food storage space, a butcher shop and a walk-in meat cooler, a dairy and bakery refrigerators and some freezer. The area is a state of serious disrepair, neither the floor construction nor, the drainage system in the kitchen area are adequate for maintaining proper sanitation maintenance.

77. Plaintiff further alleges that the Food Services area fails to meet any known public health  standard, the kitchen facilities and the equipment are absolete, unsanitary and most of the deficiencies are caused by a lack of routine maintenance operational and cleaning procedures.

78. There are extended numbers of problems with the sanitation of the Food Service Department here at the FCI., one of the problems is the kitchen is under the old Movie Theatre, which has dead birds, mice feces and when it rains it leaks down into the Kitchen, washing all feces and other contaminations, onto eating supplies and is unhealthy and a dangerous condition. Over the years there has been several cases of food poisoning, resulting from either dripping from

above onto the eating supplies, improper food temperture or by a
high bacteria count in the food, because of not keeping and main-
taining correct tempertures before serving from non-functioning
stem bends.

79.  These deficiencies have long been serios problems and the
unsanitary conditions have a direct impact on the health of the
Plaintiff and the prison population. The conditions are grossly
inadequate and the food storage conditions at the FCI are infested
with rodents, cockroaches, mices and rodent's feces in the commo-
odaties are highly medically dangerous to the Plaintiff and others
being forced to eat unsanitary food.

80.  Plaintiff, alleges the open sewer drains in the kitchen
are unclean and resulting in the accumulation of sewer gases. The
utensils and kitchen equipment is antiquated and poor organized
and difficulty to keep clean, including the hoods of the ranges,
aren't properly cleaned. in addition sanitation deficiencies are
compounded by a highly irregular and ineffective cleaning program,
the floors, walls, windows, and food storage shelves throughout
the Food Services area are soiled with dirt and rodent's dropping.

81.  The dishwashing equipment is poorly and improperly main-
tained, which means frequently unsanitarized trays, drinking cups
and ect., are going out for usages through the meal lines. Plaintiff
and other inmates have to sort through several sponns and forks,
cups to find clean ones.

82.  Plaintiff, further alleges that due to the lack of vent-
ilation, violatilized the grease from the stoves spreads throught-
out the kitchen, accumulating with dirt and thus aggravating the

16.

basic hygiene problems in the food services area. Plus on top of the hoods over the stoves there are mice feces and dead mices.

83. Plaintiff, alleges that the food products which can support food borne diseases are not properly stored and are often left out at room temperature. Food preparation surfaces and cooking equipment are not proerly cleaned and therefore provide area for significant bacterial growth. Food when it is being served to the prisoners and Plaintiff are kept at substandard temperture, due to the improper use of available equipment.

84. Plaintiff, further alleges that prisoners are not given basic instruction on food protection and food service sanitation, consequently food items are often left uncovered, allowing rodents and roaches to contaminate it, Plaintiff and others have noticed workers that work in the kitchen and around food not wearing gloves or hair nets.

85. 85. Plaintiff, alleges that pools of standing water and under the tiles resulting in heavy deposits of grease and grime, including on exposed surfaces and condensation into the food un-sanitary, unclean food contact surfaces, dried food residues and food preparation equipment. Food is after it arrives, contaminated with foreign objects suchas [roaches, hair, etc.] and incredibly bits of plastic from, bags to other thing.

86. Plaintiff, alleges that the lack of adequate supervision and survellance of prisoners has contributes significantly to the unsanitary conditions because the staff allows the prisoners to take the hand soap in the restroom for other purpose leaving the restrooms without soap, so nobody's washing their hands. There

17.

are no medical diets or special diets because no staff member pays
any attention toa prisoner that might need a diet.

87.  Plaintiff, alleges these deficiencies have long been a
serious problems and the unsanitary acts have a direct impact on
the health of the Plaintiff and other prisoner. Thereconditions
are grossly inadequate and Constitutionally Impermissible.

88.  The conditions in the Food Service Area at the FCI are
unsanitary and have a substanial and immediate detrimental impact
upon the health of the prison population.

I.  MEDICAL, DENTAL CARE AND CLASSIFICATION.

89.  Plaintiff, alleges as the population at the FCI skyrocket
the quality of medical care declined, because of the blatant in-
adequacy of health care delivery system. Prisoners in need of medical
help are given between five(5) and fifteen(15) minute for an eval-
uation and treatment. As would be expected, there are numerous
instances of neglect, misdiagnosis and maltreatment.

90.  The inefficient prison classification system in many
case there are conflicts between the prisoners due to incompability
as cell-mates. There are prisoners that are double- celled that
exhibits assaultive, aggressive or sexual behavior problems or has
a serious psychiatric or medical impairment.

91.  The clinic staff make a little attempt to evaluate and
classify a prisoner on what teh prisoner tell them when they arrives
at the FCI, because the clinic is overcrowded and the prisoners are
double-celled before the are evaluated. Furthermore, the clinic
relies on information provided by the prisoner to determine suit-
ability for double celling.

18.

92.  There has been instances when a prisoner has been double-celled even thoug his propensity for violence, emotional instability, primitive personal hygiene habits or past encounters with a desig-nated cell partner clearly indicate that he should be single celled.

93.  The failures of FCI-Terre Haute extend across the board, forms inadequate, incompent medical care and it is a matter of such a large scale failure as to the deliberate indifference of serious health needs. The medical facilities, equipment and the staff are inadequate and incompetent and insufficient to deliver adequate medical care to the prison population. This includes medical treat-ment for prisoners physical illness, dental and psychological/ psychiatric.

94.  Because of the overcrowding the lack of medical and psychiatric doctors and nurses, treatment is also shockingly deficient. There are insufficient staff to treat the increasing number of prisoners, incarcerated at the FCI., serious illnesses such as HIV or AIDS, and other known dangerous viral contagiousness are not properly diagnosed and priosners with severe mental ill-nesses are not segregated from the rest of the population and the area where psychiatric care is given is in shambles.

95.  The FCI., does not have an operating infirmary and beds but, however in the past when the FCI was a USP it did have an infirmary and beds, but its closed down and demolished like in condemned, it been trashed and loaded with dead mice and birds. The failure of medical staff to adequately screen newly arrived prisoners for communicable diseases, which would result in the threating of the well-being of the Plaintiff and other prisoners

19.

is very serious, that an infectious diseases has not actually spread, but it could.

96. The failure to screen, created an indiscriminate threat to all prisoners however, prisoners cannot very well be sure to confine the spread of their diseases to other groups. In addition the deficient of only two(2) doctors, and one dentist, for the 1200 prisoners population, dental care coverage remains inequate to meet the needs of the FCI population.

97. The inefficient prison classification system in many cases there are conflicts between the prisoner that are double-celled that exhibits assaultive, aggressive or should not be celled together.

98. Plaintiff, alleges the function of the medical services and the facilities at the FCI., has not been defined and resulting in confusion and a misunderstanding as to its basic purpose, however it seems the facilities and the staff are inadequate as either a hospital rendering extensive medical care or as a temporary infir-mary designed to meet only routine and emergency medical needs.

99. The medical services are on the first floor of the East-side. Which includes a dental treatment room, one(1) emergency room, two(2) examination rooms two(2) doctor;s room and offices and two(2) small rooms one for lab and the other for X-ray, all the room are confined and congested.

100. Plaintiff, alleges as the population at the FCI., the quality of health care delivery system fell below the Constitutional requirements. prisoners in need of medical help can't get any, because after midnight to 6:00am, there are no medical staff on duty.

20.

H.  FIRE SAFETY.

101.  The sustandard fire prevention at FCI., is very poor
in the units, which is endangering all the prisoners health and
lives, because there are no fire extinguishers in the housing
units, with the except of one(1) that is lock in the unit officer's
office, in which prisoners has no way to battle small fires, how-
ever, there are old equipment of a fail smoke detector/fire alarm, it
doesn't work. The skeleton of a new fire alarm system is being
installed slowing, but is not working also. Not fire drills have
every be explained or practiced. Prisoners have the right[s] not
to be subject to unreasonable threat of injury or death by fire
need not wait until actual casualties occurs in order to obtain
relief from such conditions.

102.  There is a serious fire safety hazard at the FCI., the
smoke exhaust fans in the units don't and wounld not be adequate
to protect prisoners from smoke inhalation. The lack of fire safety
equipment is exacerabrated by the high combustible materials in the
storage areas and in the housing units are very dangerous, because
the fire system does not work or been tested.

103.  The physical problems at the FCI., is the lack of an
emergency evacuation plan or fire prevention equipment. A dangerous
situation is created by the dearth of the equipment, the combust-
ibility of portions of the prison and the lack of staff training
for emergency evacuation.

104.  A serious fire hazard in the cell blocks and the age of
the structure, because the numerous coats of paint on the walls.
in the event of a serious fire, the requirement of the officers

21.

would have to individually unlock each cell door with a key that could easily result in a loss of life and a disaster of the most serious proportions. There are exits only at the North and South end of the cell blocks and those lead into parts of the prison. The heavy reliance on the actions of the prison officers to facilitate evacuation, that the personal safety of the prisoners is all but ignored.

105. The cell houses and cells sprinkelers throughout, but there are no emergency exit to the outside except through keyed doors(locked) or through barred window to the outside yards. However, there are some fire extinguishers and fire fighting equipment, but it kept behind locked bar-doors and are inaccessible to anyone without a key and none can be reach by the prisoners only by the staff.

J. COMMISSARY AND SMOKING.

106. Plaintiff, alleges that here at the FCI., the commissary is over charging prisoners up 35% to 55% markup or more on all items with the exception of stamps, this is unconstitutional compare to the other prisons prices.

107. The Federal Bureau of Prisons should not be allowed to be marking up the prices on items as those in the free society. Items that are priced higher tham it would be in the supermarkets in the real world. The pay rate are to low for this.

108. The Warden placed a band on smoking for the prisoners, but not on the staff, which has the OK to smoke inwhich the warden designated, however when the band on smoking started that when the commissary prices started to rised, up to 50%, because of the lost of tobacco sales.

109.    The Federal Code of Regulations commands the Warden
to desingate the smoking areas, it does not say that the Warden
can take smoking out of the FCI without the Federal Law , the
Constitution and Legislation saying to stop smoking. There is no
Law that say the Warden has the right to violation of the Consti-
tution under the First Amendment of Choice.

110.    The deprivations suffered by plaintiff appears to have
been the results of an on going patterns of conduct, practices
procedure of all the Defendants herein. The Plaintiff is cognized
that the Defendants will continue their deliberate indifferences
to deprive the Plaintiff of his Constitutional Rights and continue
to place plaintiff and others in a Cruel and Unusual Punishment
situation, plus keep denying plaintiff and others Due Process of
the Law.

## V.

### FIRST CLAIM FOR RELIEF

A. VIOLATION OF THE FIRST, FIFTH AND EIGHTH CONSTITUTION AMEMDMENTS.

Plaintiff, realleges and incorporate paragraph (1) thru (110)
of this civil complaint and further alleges as set forth herein.

1.    Plaintiff, complaint sufficiently alleges that the prisons
conditions are dangerous and the prison personnel were/are sub-
jcetively aware of Plaintiff being put in a unsafe conditions of
confinement, by Defendants.

2.    United States of America through the Federal Bureau of
Prisons has a duty to provide suitable quarters and for the safe-
keeping care and subsistence of all persons convicted of offenses
against the United States.

3.   The Federal Bureau of prisons has failed to properly house and care for Plaintiff, which he is ill-placed because of the Defendants malfeasance and nonfeasance and deliberate indifference has caused suffering, pain and discomfort unjustly and without cause to the Plaintiff.

4.   The Defendants individually and virtue of law, in their personal capacities, but said acts were illegal and each individual Defendant inconcert with each other acted deliberate and willfully betrayal of trust and confidence that was invested with them through the United States of America and the Federal Bureau of Prisons with specific intent to deprive the Plaintiff of his Constitutional Rights to a clean and safe conditions of confinement and a safe environment.

5.   Defendants, has a statutory obligation to provide a safe and healthly environment and to provide adequate and competent medical treatment/care and well-being of Plaintiff, as well as others in there custody and control. There failure to intervene to prevent the unsanitary healthly, dagerous, and hazardous conditions reflected a reckless and callous indifference to the Plaintiff safety.

6.   As a direct result of said violations of Plaintiff's Constitutional Rights to medical and a safe environment. Plaintiff was made to suffer emotionally, discomfort and was deprived of minimal civilized measures of life's necessitities.

7.   Defendants nonfeasance has caused the dangerous, unhealthy and unsanitary conditions of confinement, by Defendants ill-failure to prevent the dangerous and hazardous condition have caused emotional pain and insecurity as a result. Defendants, including the FBOP,

DOJ and United States have a Constitutional duty to provide a safe environment, 'inter alia' pursuant to Title 18 U.S.C. 4042(a)(1)(2)(3).

8. By Defendants' ill-failure to exercise the standard of care that a reasonable prudent person would have done in a similar situation, Defendants ill-conduct fell below the legal standard extablished to protect Plaintiff against unreasonable risk-of-harm. Plaintiff is put in a location which is both dangerous and hazardous, created by the Defendants deliberate indifference.

9. Defendants individually and inconcert with each others, under the pretense of colour and virtue of law and in their personal capacities, but said act[s], were/was illegal and each Defendant individually and inconcert with the others act[ed] deliberately, intentionally, wantonly, disregardful of Plaintiff's rights to be in a safe environment. Defendants betrayal of trust and confidence that was/is invested with them through the United States and the Federal Bureau of Prison with speccific intent recklessly disregarded their legal duty and consequences of their action deprived Plaintiff of his rights to a safe environment.

10. Defendants were/was under a clearly established Constitutional duty to protect Plaintiff from harm. Deffendants should have exercised the proper degree in reference to provisions of guarantees, safekeeping and care of the Plaintiff. The Defendants would have treated the hazardous conditions seriously or at least considered it and taken unsanitary indequate Medical/Dental problems into account, Plaintiff would have not been placed in a Cruel and Unusual Punishment.

25.

11. Defendants, are directly liable and responsible for the unsafe unsanitary and inadequate Medical/Dental. Plaintiff has suffered by their willful, knowing and reckless failure to correct the unsafe unsanitary and dangerous conditions, therefore, creating an atmosphere in believing such willful and wanton misduct would be condoned and justified by their Superiors.

12. As a direct result of said violations of Plaintiff's Constitutional Rights to a safe and healthy environment, Plaintiff is forced into a cell that has only 60 square feet and because of the conditions, Plaintiff's was made to suffer emotionally and deprived of live's necessity. Because of the willful, wanton and neglectful actions of the Defendants. Therefore, Defendants had no justification in law and their was gratuitions improper.

13. The reckless endangerment act[s] of Defendants herein alleged committed either on the instructions of Defendants, Nalley, Bezy, Veach and Marbury, as their positions as Director and Wardens, the acts and conduct of said Defendants alleged herein represent the official policies of the FBOP.

14. Defendants Knowing of the dangerous and hazardous conditions and knowing also that by forcing two(2) prisoners in a cell that was designated for one Prisoner, demonstrates their willful neglignece to the safety of Plaintiff and other Prisoners.

15. Defendants appear to be violating Constitutional standards for a safe environmant and actual controversy exists between the parties as to the interpretations of the Constitutional mandate for a safe environment conditions and overcrowding unsanitary conditions. Plaintiff is a victim of punishment administered in a

26.

disproportionate manner and constitutes cruel and unusual punishment
which was unwarranted cruelty, unjustiable and excessive.

16. Defendants, knowing of the overcrowding and knowing also
of the inadequacies and deficiencies in the medical facilities staffing
and procedures at the FCI., having a duty under the Fifth and Eighth
Amendments to establish and implement policies, regulation and procedures
designed to assure that Plaintiff receive competent and adequate care in
the comformity with standards for delivery of medical/dental treatment-
care under the Eighth Amendment.

VI.

SECOND CLAIM FOR RELIEF

B. CRUEL, UNUSUAL AND INHUMANE CONDITIONS OF CONFINEMENT.

Plaintiff realleges and incorporates paragraphs (1) thru (110)
of this civil complaint and further alleges as set forth herein.

1. Defendant, USA owns the FBOP and the FCI-Terre Haute and
Lappin, Gonzales and Mukasey are/was the authorities responsible for
making official policies for said conducting of the operations and
management of the FBOP and have custody of all prisoner detained or
incarcerated in the Federal Systems.

2. Defendants Lappin, Gonzales, Mukasey and Nalley were/are
acting under color of Federal Law and Authority and were deliberately
indifferent and negligent of their responsibility to Plaintiff while
they are in the Defendants care, control and custody as a Prisoner.

3. Defendants, Lappin Gonzales, Mukasey, Nalley, Bezy, Veach,
Marbury and Jett, knowingly knew that the overcrowding of cells,
unsanitary conditions, inadequate improper and incompetent medical-
dental, no diets, are medically dangerous and unsafe, also the

27.

Defendants knowingly violated the Eighth Amendment by placing
two(2) prisoners in a cells that was designed for one(1) prisoner,
poises a clear and present danager to the health and safety of
Plaintiff as well as other prisoners.

4.  Defendants all knew that the dangerous and hazardous
conditions existed and knew the conditions in the cells was un-
safe and poised a clear and present danger because of no ventilation
of the cells is unhealthy and unsafe.

5.  The Deffendants all having the power to correct the infirm
conditions, willfully, deliberatily, reckless, with gross negli-
gence and with their deliberate indifference disregarded the
medically dangerous risk. The failure on the part of Defendants
by not taking any action[s] to prevent such infirm conditions
constituted a practice, policy and regulations which deprived the
Plaintiff of his Constitutional Rights to be free from Cruel and
Unusual Punishment.

6.  The deplorable conditions which existed at the FCI., at
all time relevant hereto which are, due to the act[s] of mal-
feasance and nonfeasance, which cause the violations of the Plaintiff's
Eighth and Fifth Amendment Rights to Due Process and Equal Protec-
tion of the Law, rendering the Defendants liable.

7.  Defendants, Lappin, Gonzales, Mukasey, Bezy, Veach, Marbury,
and Jett individually collectively was/as the appointees knowingly
disregarded the unsanitary conditions in the FCI., by their mal-
feasance and nonfeasance, failed to alleviate the conditons which
led to Plaintiff and others being denied adequate and proper

28.

competent medical treatment/care 'inter alia'.

8. Defendants Lappin, Gonzales, and Mukasey at all times hereto mentioned, is the Director and was/is Attorney General, as such they are the commanding Officerrs of all other Defendants and all are responsible by law for enforcing the regulation, policies, procedures and rules of the Federal Bureau of Prisons.

9. Defendants , possessed knowledge of both the daangerous and hazardous condition and have the means to cure the infirm conditions and inadequate medical/dental conditions, but still the Defendants intentionally refused to prevent the unsanitary conditions so that a conscious, culpable refusal. Defendants, were/are under a clearly established Constitutional Duty, to the dangerous and hazardous unsanitary conditions. Its seems that the Defendants are unwilling to handle the problems situations.

10. Defendants, knowingly knew or should have known of pervasively, obviously, unmisstakeable dangerous and hazardous conditions at the FCI., with willful and reckless disregard for the Unconstitututionally infirm conditions. Defendants acted with deliberate indifference, infringing on a clearly established Constitutional Right[s] of Plaintiff.

11. Defendants, negligently operated and managed the FCI by failing to properly supervised the review the operatios and management, as well as the activities and work performs of all Defendants.

12. As a result of the overcrowding, dangerous, unsafe, unsanitary and hazardous condition, indequate, incompetent, and improper medical/dental treatment/care, has caused Plaintiff to be forced to suffer 'physical pain' and to continues to suffer

mental and emotional harm and damages to his self-esteem.

13.  Defendants, failed to adequately supervise the actions
or inactions of the correctional staff and failed to provide a
safe living condition and maintain adequate and proper medical-
dental treatment/care, inwhich Plaintiff have suffered physical
harm perpetated by the Defendants, from whom Plaintiff's was not
reasonably protected from harm.

14.  Defendants, knowingly knew that the overcrowding of
cells,lack of adequate ventilation, fire safety, sanitation, medi-
cal/dental treatment/care and the lack of clean water(rust water),
alone with adequate cleaning supplies, coupled with dangerous and
hazardous conditions indequate classification of prisoners and
placement of two(2) prisoners in cells designed for single occ-
upancy, knowingly poised a clear and present danger to the safety
of the prisoners and plaintiff. Despite having the power to correct
these conditions, Defendants willfully, deliberately negligently
and with malice continued to permit these Unconstitutionally
violations to occur, including but not limited to permitting the
'Cruel and Unusual Punishment' suffered by the Plaintiff.

15.  The unhealthy and unsanitary conditions which exist
at the FCI., which were and are directly attributable to act[s]
omissions of Defendantss, thereby, violating the Plaintiff's
Constitutional Rights to be free from Cruel and Unusual Punish-
ment and Equal Protection under the laws as guaranteed by the
Fifth and Eighth Amendments rendering the Defendants liable.

16.  Defendants being so situated that any one of them
could have acted to prevent the unsafe and unsanitary conditions
of confinement, thats causing the Plaintiff and others were/are

30.

contentiously exposed to a physical dangerous condition.

VII.

C. VIOLATION OF CIVIL RIGHTS, THE FIFTH AMENDMENT, DUE PROCESS
AND EQUAL PROTECTION.

Plaintiff realleges and incorporates paragraphs (1) thru (110)
of this civil complaint and further alleges as set forth herein.

1. Plaintiff complaint sufficiently alleges, that the prison
personnel were subjectively aware that the Plaintiff was denied
Due Process and Equal Protection, inwhich Plaintiff was injured
by the denial.

2. Defendants were/are deliberately indifferent, with know-
ledge for the very purpose of causing harm. Defendants standard of
behavior is marked by their persistent negligence and carelessness.

3. Defendants unrestrained reckless misconduct has further
enhanced Plaintiff's suffering by placing him in a Cruel and Unjust'
position inwhich he was forced to live in and unsanitary and unsafe
conditions of confinement by Defendants willfull and wanton acts.

4. Plaintiff, further alleges that the failure of Defendants
Lappin, Gonzales, Mukasey and Nalley, to take action against the
other Defendants for dening the rights to a safe and sanitary,
conditions of confinement, demonstrates wanton and reckless, mis-
conduct and reckless disregarding the Rights of Plaintiff contributing
to the Constitutional violations.

5. Plaintiff is cognized alleges that the Defendants was/were
aware of and approved of and generally participated in, said denial
of Due Process By the Defendants of Plaintiff's.

6. Defendants knowingly knew of the facts that the Plaintiff
faced a substantial risk of serious harm and failed to take reasonable

31.

steps to prevent the incompetent, improper, indequate medical care, the unsafe, unsanitary and dangerous and hazardous conditions of confinement from occurring. Defendants misfeasance, nonfeasance and wanton misconduct failed to act in the face of an unjustifiable high risk of harm that is either known or so obvious that is should have been known.

7.   Plaintiff was injured by the actions of Defendants displaying negligence with intent to deprive plaintiff of Rights, by the breach of fiduciary duties and have caused the conditions of confinement by knowingly denying Plaintiff, of his Fifth and Eighth Amendment Rights to Due Process and Equal protection, and to be free From Cruel and unusual Punishment.

8.   Defendants have a Constitutional duty to protect Plaintiff and the Defendants were aware of the fact that the serous condition existed by intentionally, unnecessarily and recklessly endangering Plaintiff, because of an unjustifiable high risk imposed upon Plaintiff.

9.   Plaintiff has stated a proper cause of action because of prison authorities. The aforesaid acts of malfeasance, nonfeasance and oppression under their offices, and/or omissions were negligent and/or reckless and/or intentional, thereby exposing Plaintiff to undue suffering and inflicting pain and threat of tangible residue injury.

VIII.

FOURTH CLAIM FOR RELIEF

D.   CIVIL AND CRIMINAL CONSPIRACY IN VIOLATIONS OF 42 U.S.C.
     §1985(A)(3)(4) AND TITLE 18 U.S.C. §§241 AND 242.

Plaintiff realleges paragraphs (1) thru (110) of this Civil

32.

complaint and further alleges a Civil and Criminal Conspiracy.

1. Various defendants and individuals, not made a defendant in this complaint, participated as co-conspirators with the defendants, in violations alleged in this complaint, and performed acts that were in furthereance of the conspiracy.

2. Plaintiff, like others before him has been impriosned and defrauded of his right[s] to adequate, medical, sanitary, and a safe environment. Beginning in August 9, 2006, when Plaintiff arrived and continuing to the date of filing of First and this Second amended complaint, there has been a continuing combination of conspiracy of deliberate indifferences by the Defendants, in an unreasonable restraint.

3. The combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the Defendants and co-conspirators, the substantial term of which was to place Plaintiff and others in an unsafe environment, so as to keep Plaintiff and others from getting adequate and competent medical-dental care.

4. Defendants, by their malfeasance and act[s] and omissions were for the very purpose of causing harm with knowledge that harm would result.

5. Defendants, were co-conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive plaintiff of, and others of their right[s[ as protected by the Constitution.

6. The failing of the Defendants to alleviate a significant risk that they should have perceived, but did-not, by the breach of fudiciary duty and overt act[s] had caused a "Civil and Criminal Conspiracy" to deprived Plaintiff of his Constitutional Right[s].

33.

7.   All the Defendants have a Constitutional Duty to protect the Plaintiff and by their nonfeasance Defendants failed to act in the face of an unjustifiable high risk of harm and injury which was so obvious they should have known.

8.   Defendants, individually and inconcert with each other, acted under pretense, color and virtue of law[s] and in their personal capacity, but said act[s] were illegal and each Defendant, individually and inconcert with others, acted willfully, knowingly and with specific intent to deprive Plaintiff and therefore, warrants the imposition of damages.

9.   The conduct of Defendants was/is willful, wanton and with an evil motive intent with reckless disregard for the Right[s] and Safety of Plaintiff and therefore warrants the imposition of damages.

10.   In doing the act[s] alleged herein, each of the above-named Defendants acted as agents for and on behalf of the united States and the Federal Bureau of Prisoners and was acting at all times material herein the scope of their respective agencies and in further-erance of the above-described conspiracy.

IX.

Fifth claim for relief

E.   INTERFERENCE WITH PLAINT'S CIVIL RIGHTS IN VIOLATION OF Title
42 U.S.C. §1986.

Plaintiff realleges and incorporates paragraphs (1) thru (110) of this civil complaint and further alleges that Defendants have interfered with Plaintiff's Civil Rights as set forth herein.

1.   Plaintiff is injured in the nature of an unsafe environment, inadequate medical/dental treatment/care, by the actions of the Defendants by displaying negligence with intent to deprive Plaintiff

34.

and others of their Right[s] by breach of the Constitutional Duty and have casued the injury by committing a Civil Conspiracy by denying Plaintiff and other of their Constitutional Rights to be free from Cruel and Unusual Punishment.

2. In addition, the Defendants and the Federal Bureau of Priosns and their officers, agents and employees were grossly negligent by failing to alleviate the dangers of the unsafe environment. On the date in question when they individually and collectively knew of the dangers or in the exercise of ordinary care should have known based on prior experience, that this practice made it highly forseeable, in the dangerous conditions.

3. Defendants and their officers, agents assistants and empl oyees, individually and collectively were negligent with deliberate indifference in allowing Plaintiff and others to be in placed in an unsafe environment and conditions of confinement that is dangerous. Putting Plaintiff and others in a situation knowing that an injury would be-fall upon Plaintiff and others, the actions of the Defendants made it highly forseeable that plaintiff and others would be physically injured.

4. In addition Defendants and their officers, agents assistance, and employees significantly failed to provide safety and protection for Plaintiff and others by failing to take action and cure the problems.

5. The acts of the Defendants, each subjecting the Plaintiff to Cruel and Unusual Punishment in violation of the eight Amendment to the Constiaution and the Fifth Amendment Right to Due Process and Equal Protection, causing Plaintiff to suffer an irreparable injury.

6. Plaintiff is injured and has suffered great pain of the body and mind from the unsanitary conditions and unsafe conditions, which also hurt Plaintiff emotionally and caused a psychological injury.

7. Defendants were aware of the fact that the unsanitary conditions were danger, they acted intentionally and unnecessarily recklessly endangered the Plaintiff, therefore inflicting pain upon the Plaintiff by their negligence.

8. Defendants aforesaid acts of malfeasance, nonfeasance and oppression under their offices and/or ommissions were negligent and or reckless and or intentional.

9. Plaintiff, has stated a proper cause of action because of prison authorities have denied reasonable safety measures in the face of such an obvious need for attention when Plaintiff was thereby exposed to undue suffering or with the threat of tangible residue injury.

10.. Plaintiff has established a duty of care owed to him by the Defendants pursuant to Title 18 U.S.C. §4042.

X.

PRAYS FOR RELIEF

WHEREFORE,Plaintiff prays for relief as follows:

1. That the court determine and enter judment declaring that the act and acts and omissions of Defendants, as set forth herein violated Plaintiff's Rights secured to Plaintiff by the First, Fifth, and Eighth Amendments of the Constitution of the United States.

2. Enjoin the Defendants , their employees, agents and successors in office from refusing to provide complete medical and/or delaying provision necessary medical treatment/care to Plaintiff and others

either at a suitable and adequate facilities within the Federal
Bureau of Prisons or elsewhere.

3.  Enjoin the Defendants and their successors in office from
failing to instruct, supervise and train their employees and agents,
in such a manner as to assure the delivery of medical/dental treatment-
care to plaintiff and others which consistent with the standards
of medical care and sanitary conditions under the Eight Amendment.

4.  That the court establish a panel of independent sanitation,
ventilation, plumbing, kitchen, and medical experts to evaluate
the delivery of safe and sanitary procedures and policies and also
for the medical/dental treatment/care clinic at the FCI and insure
the compliance of the Defendants and their successor in office with
this court.

5.  Plaintiff demands a trial by jury of at least (12) as to
all issue so trialable under the Seventh Amendment herein.

6.  Plaintiff, demands judgement for the willful and wanton
negligent acts of Deliberate Indifference of the Defendants.

7.  Award Plaintiff compensatory damages from each Defendant
in the amount of Eight-Hundred-Dollars a day from Aug. 09,2006 to
the present, for the Deliberate Indifference and for the wanto and
reckless misconduct.

8.  Award Plaintiff consequential damages from each Defendant-
in the amount of Seven-Hundred-Dollars a day from Aug. 09,2006 to
the present, for injuries substained from the willful and wanton
breach of a Constitutional Duty.

9.  Award Plaintiff exemplary damages from each Defendant
in the amount of Five-Hundred_Dollars a day from Aug. 09,2006 to

the present, for injuries cause by the willful and wanton aggravated breach of the Federal Laws and oppression under their offices.

10.    Award Plaintiff damages from each Defendants in the amount of Four-Hundred-Dollars a day from Aug. 09,2006 to the present, for forcing the Plaintiff and others to live in an Unconstitutional conditions of confinement and exposing Plaintiff to a dangerous and inhumane environment.

11.    Grant such other relief as it may appear that the Plaintiff is entitled to.

Dated this 25th day of July, 2008. C.M.

Respectfully submitted,

Carl McIntosh 22260-044
FCI-Terre Haute
P.O. Box 33
Terre Haute, IN 47808

CIVIL RIGHTS COMPLAINT
END

38.

# NOTICE:

## Tomorrow

## Thursday, March 12, 2008

**Water will be shut down from 8:00 a.m. - 4:00 p.m. for maintenance.**

**Water may remain cloudy or discolored for up to three days but will remain safe to drink.**

**All meals will be served in dinning room.**

**Institution will be on Holiday Schedule.**

**Recreation areas will be open and movies will be shown.**

**After noon meal all water systems in cells will be flushed.**

**Unit Management**

## All FCI Inmates

At the FCI, there has been confirmed cases of the Norovirus. The Norovirus is highly contagious and very resilient. It is not life threatening. Norovirus can be transmitted by multiple routes: foodborne, waterborne, person-to-person, and inanimate objects. Contamination can occur either by direct contact with soiled hands, environmental surfaces which are contaminated with stool or vomit, or by tiny droplets from vomit which can become airborne. The virus cannot multiply outside of the body but can survive for several days.

Therefore, to prevent further spread of the virus, inmates have temporarily been secured in their cells. All activities will be contained to the cells. FCI visitation has been temporarily suspended.

As the information on the institution's operation changes, you will be notified.

4/1/08
_____
Date

_H. J. Marberry_
H. J. Marberry
Complex Warden

2.


*Federal Correctional Complex/FCI*
*Terre Haute, Indiana*

MEMORANDUM FOR INMATE POPULATION

FROM:            W. ROAL
                 Acting Warden

SUBJECT:         Norovirus Update

This information is being provided to inform the inmate population about positive cases of the Norovirus. The following guidelines have been developed to help stop the spread of Norovirus. Norovirus is highly contagious and very resilient. It is not life threatening. Norovirus can be transmitted by multiple routes: food borne, waterborne, person-to- person, and inanimate objects. Contamination can occur either by direct contact with soiled hands, environmental surfaces which are contaminated with stool or vomit, or by tiny droplets from vomit that can become airborne. The virus cannot multiply outside of the body but can survive on inanimate surfaces for several days.

Executive staff made the decision to contain the virus by limiting inmate to inmate contact. The population at the FCI need to expect to remain secure throughout the weekend. As a result, the following initiatives are in effect to assist with containing the Norovirus.

1. Visiting will remain suspended throughout the duration of this weekend (Friday, 4 April, 08 through Sunday, 6 April, 08). If you have an out of state visit scheduled for this weekend, please advise a member of your unit team in order for them to make notifications concerning the visiting suspension.

2. Inmate Transfers to other institutions have been suspended until further notice.

3. The institution will require sanitizing in accordance with Indiana State Department of Health Guidelines during the isolation period. This will occur in three phases.

Phase I:   **Cell Sanitation.** You will be required to sanitize your cell. This will require you
           spray a 10% solution of bleach in all areas of your cell. Do not wipe it off. Let the
           disinfectant dry for 10 - 20 minutes. This process will be completed daily until further
           notice.

Phase II:  **Common Areas.** All common areas in the unit must be treated with the disinfectant
           solution. Orderlies will be employed to clean all areas of the unit with special
           emphasis to those inanimate areas (handrails, chairs, etc).

Phase III: **Showers. Showers will begin Friday, 4 April, 2008.**

4. Hand washing Procedures: Ensure you wash your hand in accordance with the guidelines established by Health Services.

If additional information is required, contact staff for clarification.

There is no air condition in the living quarters of the F.C.I. with the exception of the so-called Honor Dormitory for a small group of prisoners over the age of 45, which is a violation of the Equal Protection Clause comparing this with the rest of the Federal Correctional Complex's Facilities, and the other Federal Medical Centers around the County. Also, the Unit Office's Office in the living quarters, do have Air Condition.

The cells in the F.C.I., Terre Haute, have more than five(5) coats of paint on the walls. Which makes an prisoner breath constantly those chemicals and makes it a serious fire hazard problem.

In the F.C.I., prisoners are not allowed to smoke but, the staff are permit to smoke in and on the premises of F.C.I., where according to the administration, the Code of Federal Regulations pursuant to [551.163] orders the warden to designated smoking areas, it does not permit, or state that the warden can take smoking away, or out of the prisons. What it does say is that the **Warden Shall** designated smoking areas.

The Plaintiff has developed a Chronic physical injury since his arrivial Aug. 09, 2006. From breathing asbesto, filth and other contaminates, the Plaintiff has developed Asthma and is taking medication for it, the med's are: Albuterol Inhaler HFA 8.5 gm and Triamcinolone 200mcg and for the irratation and inflamation Flunisolide Nasal Spray 25 mi.. On Jan. 22, 2008 the PA examined the Plaintiff after complaining of choking and sneezing daily, saw that the Plaintiff has a Respiratory System Bacterial infection and prescribed a n antobotic pill called Cephalexin 500mg. The PA did not document any of these condition, they never do they just

4

prescribe medication and have no follow uo visit to see if the patients is well.  The Plaintiff has a high risk of developing the lung cancer from exposures to asbestos called Mesothelioma, in his latter life.

The Plaintiff also has been exposed to drinking contaminated water, which has rust particles and other pollutenates and the medication prescribed for his stomach problem is Ranitidine, this medication stop the hearth burns and pouring acid caused by the polluted drinking water. The Plaintiff has a high risk of developing Stomach cancer in his latter life.

These are the Deliberate Indifferences cause by the Defendants to the Plaintiff.

Dated this 5 day of Feb.,2008.

Carl McIntosh
22260-044
FCI-Terre haute
P.O. Box 33
Terre Haute, IN 47808


Mary Ellen Collins 2/5/2008                     3/22/2008
Notary Public Date   State of Indiana, County of Vigo   Expiration



Notary Seal


5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

CARL MCINTOSH, # 22260-044
FCI· Terre Haute
        Plaintiff,
DOB 33
Terrs. Haute, IN 47808                    CN.

UNITED STATES OF AMERICA,

_____Defendants._____/

PLAINTIFF MOTION TO CHANGE VENUE
UNDER 28 U.S.C. 1412

A District Court under Title 16, may  transfer a case or pro-

ceeding to another District, I would like to change venue due to

the facts: Racial discrimination from the Judges  and Defendants,

which have conspired under Title 18 U.S.C. §§241 & 242, to deprive

or depriving a person(Plaintiff) of his Constitution Rights, or

Law of the United States. To dismiss my complaint the Judge conspired

alone with other to steal the complaint I mailed to the court clerk.

This complaint had been in since Nov 27, 2006 and the only way to

dismissed it was to have the Plaintiff amend the complaint , then

have the complaint come up missing by the deadline. Leaving the

Plaintiff still to be subject to prejudices and irrepareable injuries

and violation of his Constitutional Civil Rights. This Southern

District of Indiana is known to be the headquarter of the KKK and

3 State judge has already been recalled. These people are known to

be an undercover organization and just because everybody turn their

thare head and close their eyes does not mean they don't exist. Dan

Rather of Sixty Minute stated that, the children of the KKK and other

RECEIVED
racial groups are educating theirselves and working for the govern-

AUG -1 2008 enforcement and becoming Judges, attorney, to oppress

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

people legally. Just because you don't known something does not

mean it does not happen. Remenber the Florida federal prosecutor

Acthinson whom was caught in Michigan gettin off an Airline plane,

in a sting by the FBI for trying to have sex with the four year

old little girl, these behavior pattern can occure in Federal

employee whom, is trusted with to much honor and never are question

about right and wrong, getting away with everything cause nobody

looking or cares. Being an undercover Klan memenber working the

[handwritten: Corrupted employer]

courts, being a prosecutor, just getting away with it all. No

[handwritten: being a marshal]

one can claim that what I say is the truth or not, but remenber

Dan Rather said it on Sixty Minute.

Carl M Stout
22260 - 044
July 25, 2008

2.



**U.S. D_partment of Justice**

Federal Bureau of Prisons

_United States Federal_
_Correctional Complex_
_Terre Haute, Indiana_

To:      Chief Judge David Hamilton

From:    Gerald V. Rowe,
         Correctional Counselor

Date:    May 31, 2008

Subject: Misplaced Legal Mail

Dear Chief Judge David Hamilton

    This letter is to inform you of a misplacement of some legal mail that was mail out by Inmate
Carl McIntosh #22260-044.  On February 6, 2008, Inmate McIntosh #22260-044, legal mail of
an amended civil complaint was verified and stamped by the Record Office clerk, and placed in
the legal mail box.  Unfortunately the mail that Inmate McIntosh had mailed out was misplaced
between the Institution and the Post Office and did not arrive at its destination.  Inmate McIntosh
had nothing to do with the mail once it is placed in the Legal mail Box. Nothing Following_____

Thank You

FCC-Terre Haute, Counselor G.V. Rowe

UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF INDIANA

POSTMASTER GENERAL
INSPECTORS
DEPUTIES ✓

RE:  Legal mail and certified mail being stolen by employees of FBOP.

   Dear Sir/Madamm,

The Federal Bureau of Prisons has mailing policies for inmates to
follow, that restrict the writing, incoming and outgoing mail. None
of the policies state that the employees can take, steal or destroy
any mailing without a written notice to the inmate.

On Feb. 6, 2008 I went to the records office to mail a Legal letter
to the District Court Clerk for Judge David Hamilton, the letter
was stamped by the record clerk and I placed it in the legal mail-
box, in the records office. The Judge never received that letter
and dismissed my cases. Three week letter, I ask the Judge for re-
consideration of the judgement cause I know he's gotten that letter
by now. The Judge stated, I was in the same bag, cause the letter
still has not arrived. The missing letter got my case dismissed
and was the only way my case to get dismissed was for the letter
to be misplaced or stolen by the Defendants or others.

The Defendants never got served the complaint but knew all about it.
The only conclusion is that they all conspired against me the Plaintiff,
to stel that letter. The letter was an amended Civil Complaint about
inhumane living condition of confinement. My mail was not the only
mail stolen by employees of the Defendants of Defendants.

The have conspired to deprived the Plaintiff, Carl McIntosh of his
Constitution Rights. Violating the U.S. law and Title 18 U.S.C.

§§241 and 242 stating criminal liability for two or more people to deprived or depriving a person of his Constitution Right and the Law of the United States. This letter might not make it into your hands. I need acknowledgement that you received this letter.

Is it legal for the employees here to steal our mail? Just because I'm a prisoner here does not mean I don't have Civil Rights. It not fair for your Office to turn your head and ignore the illegal acts that is happening here at Terre Haute, FCI.

This was a premeditated act conspired by the Judge, the Defendants, and others to deprived McIntosh's of his Constitutional Rights, and steal that very important·letter containing the amended civil complaint. That the Defendants knew could not be received by the courts, by reading prior legal letter of McIntosh's from the same Judge, stating the Plaintiff must amended the civil complaint by Feb. 08, 2008. Reading the Plaintiff legal mail, without opening it in front of McIntosh, because the clerk of the court didn't stamp the letter legal mail open in front of the inmate, violating and putting the court clerk in the conspiracy also, depriving the plaintiff of his Constitution rights. Is stealing mail legal for them?    don't let them kill use, before you act.

Thank You,

Carl McIntosh
22260-044
FCI-Terre Haute
Terre Haute , IN 47808.

2.

UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF INDIANA

RE:  50 of my mailed letters didn't reach its destination, and a
     FBOP Terre Haute employee named McKee was caught shreading
     and stealing inmates mail.

Dear Sir/Madam,

Since my arrival to the FCI-Terre Haute on Aug. 9, 2006,

letters I have mailed to Congressmen, Attorney, Senators, Courts,

Local Municipalities and friends have not been delivered to them.

When I asked the mail room about this, they replied that the don't

shread or steal any mail. On Feb. 6, 2008 I mailed a package to the

District Court Judge Hamilton and he stated he never received this

package, which was legal mail. Now since then a FBOP employee named

McKee was caught shreading and stealing inmate mail and been dismissed

from their job. I need reimbursedment of the postage stamps that was

shreaded and a document stating that this employee McKee was fired

for shreading and stealing inmates mail and was responsible for

mail not getting to the recipient. This document is needed to give

the District Judge notice of what happen with the employee's mis-

conduct, so I Can have my case reinstated. This employee misconduct

is denying the Plaintiff(McIntosh) access to the Court under the

First Amendment, denying Plaintiff redress of a grievince, because

of an employee negligence.

                                Thank You,

                                Carl McIntosh

                                Carl McIntosh 22260-044
                                FCI-Terre haute
                                P.O. Box 33
                                Terre Haute, IN
                                47808